## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE: S. WHITE TRANSPORTATION, INC.**                    **CASE NO. 10-51137-KMS**

**DEBTOR**                                                            **CHAPTER 11**

### MEMORANDUM OPINION AND ORDER DENYING
### MOTION TO AMEND CONFIRMATION ORDER AND
### REQUESTING RELIEF FROM THE AUTOMATIC STAY

This matter came on for hearing on February 10, 2011, (the "Hearing") on the Motion to

Amend Confirmation Order and for Relief from the Automatic Stay (the "Motion") (Dkt. No. 125)

filed by Acceptance Loan Company, Inc. ("Acceptance") and the Response to Motion to Amend

Confirmation Order and Relief from Automatic Stay (the "Response") filed by the Debtor, S. White

Transportation, Inc. (hereinafter referred to as "SWT"). At the Hearing, William Pettey, Jr., appeared

on behalf of SWT, and Richard Montague appeared on behalf of Acceptance. Counsel for both

parties presented arguments at the Hearing and submitted post-Hearing briefs. The Court, having

considered the pleadings, arguments, briefs and the pertinent legal authorities finds that Acceptance's

Motion should be **DENIED** for the reasons specified herein.

### I. JURISDICTION

The Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant

to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157

(b)(2)(A),(G),(K) and (L).

### II. BACKGROUND

At the time SWT filed the instant Chapter 11 bankruptcy,  Acceptance and SWT had been

engaged in litigation in state court for more than five years. The focus of the state court litigation was whether SWT was bound by the terms of a Deed of Trust, executed on April 23, 2004 (the "April 2004 Deed of Trust"), which secured a $98,152.35 promissory note. (Dkt. No. 124, Ex. C). The parties disputed whether the individuals who signed this Deed of Trust and the accompanying promissory note had the authority to sign these documents on behalf of SWT. If the April 2004 Deed of Trust is binding on SWT, then Acceptance would appear to have a first priority,[1] perfected lien on SWT's sole asset, an office building located on Highway 49 in Harrison County, Mississippi (the "Highway 49 property").[2]

SWT listed Acceptance on its Matrix of Creditors. (Dkt. Nos. 19, 44 and 88). SWT also listed Acceptance as a creditor holding a secured claim on the Highway 49 property on Schedule D, the schedule for "Creditors Holding Secured Claims." (Dkt. No. 13). However, consistent with the state court proceedings described above, SWT noted on Schedule D that it disputed Acceptance's claim.[3]

---

[1]The record indicates there are three other entities with claims against SWT that are secured by the Highway 49 property: Whitney National Bank, with a claim valued at approximately 100,000.00; Sumrall Recycling Inc., with a claim valued at approximately $11,500.00; and the Thomas Law Firm, with a claim valued at approximately $35,000.00. (Dkt. Nos. 13, 93, and 124). Each of these secured claims are based on documents that were executed after the April 2004 Deed of Trust. (Dkt. No. 13).

[2]According to SWT's Schedule A and Schedule D, the Highway 49 property has a value of $285,000.00. (Dkt. Nos. 12 and 13). Schedule G and the Statement of Financial Affairs indicate that an individual is currently leasing this property from SWT. (Dkt. Nos. 14,15 and 93).

[3]Rule 3003(c)(2) of the Federal Rules of Bankruptcy Procedure, in relevant part, states:

Any creditor . . . whose claim or interest is . . . scheduled as disputed . . . shall file a proof of claim or interest within the time prescribed by [the Court]; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

Fed. R. Bankr. P. 3003(c)(2). Acceptance's claim was listed as disputed on SWT's Schedule D. (Dkt.

See id. Similarly, Acceptance's claim was described in SWT's proposed Chapter 11 plan as a disputed claim upon which no payment would be made unless the Court ordered otherwise. (Dkt. No. 93).

The docket reflects numerous notices sent to Acceptance during the course of these proceedings. (Dkt. Nos. 124 at ¶ 17 (noting that on the eve of a state court trial between SWT and Acceptance, proceedings were stayed when notice of this bankruptcy case was provided), 75, 76, 86, 88, 93, 94, 101-103, 110, 112 and 115. The Court specifically notes that Acceptance was mailed a copy of the Chapter 11 plan that openly challenged its claim against SWT, and that Acceptance received notice of the hearing to confirm the plan. (Dkt. Nos. 93, 101-103 and 115).

Yet, in stark contrast to its aforementioned litigation activity against SWT in preceding years, during the seven months between the initiation of this bankruptcy case on May 17, 2010, and the confirmation of the Chapter 11 plan on December 21, 2010, Acceptance failed to file a single document in this Court. Additionally, at the Hearing, counsel for SWT noted that Acceptance did not appear at the meeting of creditors held in this matter. (Dkt. No. 67) (minutes of the Meeting of Creditors filed by the U.S. Trustee, noting that no creditors were in attendance).  Thus, without objection[4], the Chapter 11 plan which was confirmed stated, in brief, that no payment would be made respecting Acceptance's claim against SWT since SWT disputed the validity of Acceptance's claim. (Dkt. Nos. 93 and 121).

---

No. 13). The deadline for all creditors except governmental units to file a proof of claim was August 20, 2010. (Dkt. No. 17). Acceptance has not filed a proof of claim. Therefore, the terms of Bankruptcy Rule 3003(c)(2) apply in this matter. See Robert E. Ginsberg, et al., Ginsberg & Martin on Bankruptcy § 10.05 (Aspen Publishers, Inc. 2011) (Bankruptcy Rule 3003(c)(2) applies to both secured and unsecured creditors).

[4]The record reflects that no creditors voted against the plan. (Dkt. Nos. 116, 117).

Two weeks after the Chapter 11 plan was confirmed, Acceptance filed an adversary complaint and the instant Motion. In its adversary complaint, Acceptance requests two rulings from the Court: a declaratory judgment stating that Acceptance's asserted lien upon SWT's sole asset, the Highway 49 property, was not affected by the Chapter 11 plan, and a declaratory judgment determining the extent, validity and priority of Acceptance's asserted lien. (Dkt. No. 124). In the Motion, Acceptance imports arguments from the adversary complaint and asks the Court to issue a judgment finding that Acceptance's alleged lien passes through this bankruptcy unaffected by the confirmed Chapter 11 plan. Acceptance bases this argument on the Fifth Circuit's decision in Elixir Indus., Inc. v. City Bank & Trust Co. (In re Ahern Enters., Inc.), 507 F.3d 817 (5th Cir. 2007). It argues that *Ahern* requires "lienholder participation in the reorganization as a condition for avoiding a lien through the Chapter 11 Plan Confirmation process." (Dkt. No. 125 at 1-2). Acceptance asserts that because it did not file a proof of claim, it has not participated in the Chapter 11 bankruptcy reorganization of SWT, and thus, under *Ahern*, its lien remains intact. See id. at 1-2. Acceptance also requests that if the Court determines, under *Ahern*, that it is not entitled to a judgment finding that its lien is unaffected by the Chapter 11 plan, that the Court "amend the Plan Confirmation Order" under the authority of Rule 9023 or 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to allow Acceptance to file a proof of claim and to have the value of its disputed claim against SWT determined by the Court. (Dkt. No. 125 at 2). Finally, Acceptance requests that if the Court is unwilling to determine the extent, validity and priority of its lien against SWT, that the Court modify the automatic stay to allow the state court to recommence its proceedings and to render a decision in this regard. SWT summarily denied most of Acceptance's assertions and argued that under *Ahern* Acceptance's lien is void. (Dkt. No. 136).

At the Hearing, counsel for Acceptance conceded that Acceptance received all of the required notice in this case, specifically noting that it had notice of the bankruptcy and notice of the plan confirmation hearing. According to counsel for Acceptance, although there was no "intent to ignore" these notices, "in fact they were ignored" due to "inadvertence and oversight." Acceptance asserts that despite its error, this Court has the authority to grant it relief, revise the Court's prior decisions, and decide how Acceptance should be treated in SWT's Chapter 11 plan based on the merits of Acceptance's arguments. During the Hearing, Acceptance urged that the Court should not allow the current Chapter 11 plan to remain in effect based simply on the "procedural failure on [Acceptance's] part to file an objection to the confirmation of the plan."

### III. DISCUSSION

**A.    Section 1141(c) of Title 11 and the *Ahern* Analysis.**

The question of whether Acceptance's alleged lien has survived the Chapter 11 plan confirmation process is governed by 11 U.S.C. § 1141(c). In pertinent part, this statute states:

> [E]xcept as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests [5] of creditors, equity security holders, and of general partners in the debtor.

11 U.S.C. § 1141(c). Construing section 1141(c), the Fifth Circuit held that a lien will be voided[6] through the Chapter 11 plan confirmation process if the following four conditions are met:

(1) the [Chapter 11] plan must be confirmed;

---

[5] "[L]iens constitute one of the interests that section 1141(c) extinguishes . . . ." In re Ahern Enters., Inc., 507 F.3d at 823.

[6] The *Ahern* court found that if the four conditions are met, then a lien is "void" or "voided" through the operation of section 1141(c). In re Ahern Enters., Inc., 507 F.3d at 822-23. Accordingly, this same terminology has been used throughout this opinion.

(2) the property that is subject to the lien must be dealt with by the [Chapter 11] plan;

(3) the lien holder must participate in the reorganization; and

(4) the [Chapter 11] plan must not preserve the lien.

In re Ahern Enters., Inc., 507 F.3d at 822. Accordingly, the proper disposition of the pending matter depends upon the interpretation and application of these criteria to this case.

**1. The First *Ahern* Condition.**

In this case, the first *Ahern* condition is clearly satisfied. SWT's Chapter 11 plan was confirmed on December 21, 2010. (Dkt. No. 121).

**2. The Second *Ahern* Condition.**

Under the terms of the second *Ahern* condition, the property that is allegedly subject to the contested lien must be "dealt with" by the confirmed Chapter 11 plan. In re Ahern Enters., Inc., 507 F.3d at 822. Neither *Ahern* nor any subsequent Fifth Circuit case defines the phrase "dealt with."[7] However, the *Ahern* court did provide one example of the proper application of this phrase. The court described a Fourth Circuit case in "which the lien would [have] attach[ed]" to a five-million dollar settlement fund. Id. at 822 (citing Universal Suppliers, Inc. v. Reg'l Bldg. Sys., Inc. (In re Reg'l Bldg. Sys., Inc.), 254 F.3d 528 (4th Cir. 2001)). The Fifth Circuit explained that the confirmed plan in *Regional Building Systems* provided that "after certain other claims had been paid . . . the [] unsecured creditors would receive a pro rata share of the remainder of the estate, including any amounts left in the $5 million settlement fund," to which the appellant creditor sought to attach its lien. Id. at 823 (citing In re Reg'l Bldg. Sys., Inc., 254 F.3d at 531). Considering these terms, the

---

[7]In *Ahern*, the Fifth Circuit was focused on "what must be 'dealt with' by a Chapter 11 plan under [11 U.S.C. §] 1141(c)," rather than on defining the phrase "dealt with." In re Ahern Enters., Inc., 507 F.3d at 822. As noted above, the court concluded that it is "the property that is subject to the lien [which must] be dealt with in the [Chapter 11] plan," rather than the lien itself. See id. at 823.

Fifth Circuit agreed with the Fourth Circuit that the five-million dollar settlement fund was "dealt with" by the Chapter 11 plan. Id. Therefore, at the very least, property that is subject to a lien which is allegedly voided by operation of 11 U.S.C. § 1141(c) may be considered "dealt with" by a Chapter 11 plan if the plan provides that the property at issue is to be distributed to creditors.

The Court finds that the property that is allegedly subject to Acceptance's lien, the Highway 49 property, is "dealt with" by SWT's confirmed plan. While SWT's plan provides that no payment will be made to Acceptance, it provides for the satisfaction of three secured claims. One secured creditor is to be paid a monthly sum from the lease income derived from the Highway 49 property. The remaining two secured creditors are to be paid "at the time the real estate collateral [, i.e., the Highway 49 property,] is sold or liquidated." (Dkt. No. 93). The plan envisions that the current lessee of the Highway 49 property will eventually take advantage of an option to purchase the property, or that the Debtor will sell the property to a third party. The proceeds from the sale of the Highway 49 property are first to be utilized to satisfy the debts of the secured creditors, and any remaining funds are to be distributed to the unsecured creditors on a pro rata basis. Accordingly, since SWT's confirmed plan states that the property that is subject to Acceptance's alleged lien, the Highway 49 property, is to be liquidated and the proceeds are to be distributed to creditors, that property has been "dealt with" by SWT's confirmed plan and the second *Ahern* condition is met in this case.

### 3. The Third *Ahern* Condition.

The issue giving rise to the greatest disagreement between the parties is whether the third *Ahern* condition is met in this case. Again, that condition requires that "the lien holder must participate in the reorganization." In re Ahern Enters., Inc., 507 F.3d at 822.

In *Ahern*, the Fifth Circuit explained that this condition "is a judicial gloss on section

1141(c)." Id. at 823. The "participation" requirement is designed to "ensure[] that the secured creditor has notice of the plan and its potential effect on the creditor's lien." Id. Thus, the "participation" analysis is actually an analysis concerning adequate notice.

In considering what standards govern the "participation" issue, the *Ahern* court noted that in 1995 the Seventh Circuit held that the only evidence of notice sufficient to satisfy this "participation" condition was the filing of a proof of claim by the pertinent creditor. See id. (citing In re Penrod, 50 F.3d 459, 462 (7th Cir. 1995)). The Fifth Circuit also noted that a more recent decision from the United States Bankruptcy Court for the District of Maryland has rejected this position, finding instead that proof that the creditor received notice of the plan itself and that the creditor had an opportunity to object to the plan is also evidence of notice sufficient to satisfy the "participation" condition. See id. (citing In re Reg'l Bldg. Sys., Inc., 251 B.R. 274 (Bankr. D. Md. 2000)).

In *Ahern*, the Fifth Circuit did not explicitly approve or disapprove of the opinion of either the *Penrod* court or the *Regional Building Systems* court in regard to the standards governing the "participation" issue. Instead, in its "participation" analysis, the court gave some credence to both decisions. After first noting that the purported lienholder in the case had filed a proof of claim, as required by *Penrod*, the *Ahern* court proceeded to conduct an analysis consistent with the *Regional Building Systems* opinion, finding that: "the plan . . . gave sufficient notice of the plan's treatment of the property to which [the creditor's] lien attached and the status of [the creditor's] claim to satisfy the requirements of due process." Id.

Unlike the *Ahern* court, this Court cannot give credence to the principles espoused by both the *Penrod* and *Regional Building Systems* decisions.  The facts presented in this case require that

this Court make an explicit choice between these two contrasting standards for "participation" since no proof of claim was filed by or on behalf of Acceptance.

While the question at hand is how to best interpret "judicial gloss," the Court believes that the appropriate place to begin its analysis of the issue is to reexamine the statute underlying the pertinent case law. Id.

Section 1141(c) states:

[E]xcept as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and *interests* of creditors, equity security holders, and of general partners in the debtor.

11 U.S.C. § 1141(c) (emphasis added).  As the *Penrod* court explained:

The term "*interest*" is not defined in the Code, but a lien is defined as an interest in property, 11 U.S.C. § 101(37), and there is no doubt that a security interest is an interest, and it is defined as a "lien created by an agreement." 11 U.S.C. § 101(51). So section 1141(c) must cover liens . . . .

In re Penrod, 50 F.3d at 463 (emphasis added); see also In re Ahern, 507 F.3d at 823 ("*liens* constitute one of the *interests* that section 1141(c) extinguishes") (emphasis added). Accordingly, section 1141(c), in pertinent part, can be fairly read as follows:

[E]xcept as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all . . . *[liens]* of creditors . . .

11 U.S.C. § 1141(c).

This provision, on its face, is not ambiguous. Unless some Constitutional conflict requires otherwise, this Court is compelled to apply the plain meaning of these terms to the facts of this case. As the *Regional Building Systems* court recognized, such a Constitutional concern may arise under the Due Process Clause of the Fifth Amendment of the United States Constitution. See In re

Regional Bldg. Sys., Inc., 251 B.R. at 286. The pertinent language of that amendment requires that "[n]o person shall be . . . deprived of . . . property, without due process of law." U.S. Const. amend. V. Since a lien "arguably constitutes a species of property," a lienholder is arguably entitled to "due process of law" before it may be deprived of its lien. In re Regional Bldg. Sys., Inc., 251 B.R. at 286; U.S. Const. amend. V.

As the Supreme Court has recently emphasized, the right to "due process" under the Fifth Amendment is simply the right to receive "notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections.'" United Student Aid Funds, Inc., v. Espinosa, -- U.S. --, 130 S.Ct. 1367, 1378 (2010) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657 (1950)).[8] Applying this principle to the present case, it is apparent that the due process rights of a lienholder in a Chapter 11 case can be effectively addressed during the plan confirmation process if a lienholder is given notice of a proposed plan that deals with the property to which its lien attaches, the plan gives sufficient notice of the status of the creditor's claim and the lienholder has

---

[8]In the context of a Chapter 13 case, one court recently found that:

> Espinosa has settled any dispute regarding the effect of a final order of confirmation on creditors. Assuming actual notice of the plan, confirmation hearing, and objection deadlines, the United States Supreme Court held that claims may be modified or discharged by the terms of a plan if the claimant fails to object and the confirmation order becomes final. Espinosa definitively ruled that notice of a plan and confirmation process satisfies due process even when its effect should only be achievable by adversary process.

In re Stewart, No. 03-18462, 2010 WL 4259940, at *8 (Bankr. E.D. La. Oct. 21, 2010) (citing Espinosa, -- U.S. --, 130 S.Ct. 1367 (2010)); see also In re Franklin, ---B.R. ---, No. 09-11784, 2011 WL 838958, at *3 (Bankr. M.D. La. Mar. 4, 2011) (similar).

the opportunity to object to the confirmation of the plan. See id.; In re Ahern, 507 F.3d at 823; In re Reg'l Bldg. Sys., Inc., 251 B.R. at 285-87. Thus, like the *Regional Building Systems* court, this Court believes that the *Penrod* court's finding, that a creditor must have "participated" in a case by filing a proof of claim before 11 U.S.C. § 1141(c) is operative, is not necessary to address due process concerns and is thus an unwarranted addition to the requirements Congress placed in 11 U.S.C. § 1141(c). See In re Reg'l Bldg. Sys., Inc., 251 B.R. at 284-90.

Furthermore, the two logical foundations upon which the *Penrod* court based its proof of claim requirement have no relevance in the present case. See In re Penrod, 50 F.3d at 463. First, the *Penrod* court asserted that the lien itself must be considered "property dealt with by the plan" under 11 U.S.C. § 1141(c) in order for the lien to be voided under section 1141(c), and that a lien can only be "dealt with" by the plan if the creditor files a proof of claim. Id. at 461-63; see also In re Reg'l Bldg. Sys., Inc., 251 B.R. at 285. However, in *Ahern* the Fifth Circuit explicitly rejected this interpretation of the "property dealt with" language in 11 U.S.C. § 1141(c). See In re Ahern, 507 F.3d at 822-23. The court explained:

> [A] requirement that the lien itself be dealt with by the plan is not a sensible reading of section 1141(c). Section 1141(c) provides that "property dealt with by the plan is free and clear of all claims and interests ..." If the lien is the property that must be dealt with, then section 1141(c) would have to be read to say that "liens dealt with by the plan are free and clear of liens." Because liens constitute one of the interests that section 1141(c) extinguishes, it is sensible to interpret "property dealt with by the plan" as the property subject to the lien.

In re Ahern, 507 F.3d at 823. Second, the *Penrod* court asserted that its findings reconciled the language of section 1141(c) with a principle espoused by several older cases, that "liens pass through bankruptcy unaffected." In re Penrod, 50 F.3d at 461 and 463 (citing Dewsnup v. Timm, 502 U.S. 410, 419-20, 112 S.Ct. 773, 779 (1992) and Long v. Bullard, 117 U.S. 617, 620-21, 6 S.Ct. 917, 918

(1886)). However, there is no obvious need to reconcile the plain, unambiguous language of section 1141(c) with the cited case law. See Dewsnup, 502 U.S. at 419-20, 112 S.Ct. at 779 (explaining that changes to pre-Code practice can be affected by unambiguous statutory language). On their face, the two Supreme Court cases cited by the *Penrod* court in support of the reconciliation argument do not directly address 11 U.S.C. § 1141(c) and do not otherwise impose a bar to the application of the plain language of section 1141(c) in this case.[9]

Finally, the Court notes that an application of 11 U.S.C. § 1141(c), as written, without *Penrod's* proof of claim requirement, "is not at odds with the principle" that liens pass through bankruptcy unaffected "unless they are brought into the bankruptcy proceeding and dealt with there." In re Reg'l Bldg. Sys., Inc., 251 B.R. at 286-87 (in part, citing In re Penrod, 50 F.3d at 463). As the *Regional Building Systems* court noted:

> Yes, the lien creditor must have been brought into the case and dealt with by the plan, but surely this can be accomplished by giving creditors notice of the case and putting them on notice of the terms of any proposed plan and opportunity to object to the plan (including objecting to the consequences that § 1141(c) brings to bear when the creditor's lien is not preserved by the plan).

Id.

In summary, similar to the findings of the *Regional Building Systems* court, this Court concludes that a creditor does not need to file a proof of claim in order for a court to find that the creditor has "participated" in a Chapter 11 case. All that is required under *Ahern's* "participation" analysis is notice sufficient to satisfy the requirements of due process.

It is undisputed that Acceptance received adequate notice throughout these bankruptcy

---

[9]The *Regional Building Systems* court distinguished the issues addressed in *Long* and *Dewsnup* from the issues raised by section 1141(c). See In re Reg'l Bldg. Sys., Inc., 251 B.R. at 287-289.

proceedings, including notice of the plan and the plan confirmation hearing. Furthermore, as noted herein, SWT's confirmed Chapter 11 plan clearly deals with the property that is allegedly subject to Acceptance's lien and it openly challenges Acceptance's claims, thus satisfying the requirements of due process. See (Dkt. No. 93 at 4) (stating that SWT "disputes the claim by Acceptance Loan Company, Inc.," and that "[n]o distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order [of the Court]"). Consequently, Acceptance is deemed to have "participated" in these bankruptcy proceedings, including the plan confirmation process, and the third *Ahern* condition is met in this case.

### 4. The Fourth *Ahern* Condition.

The fourth *Ahern* condition is that the Chapter 11 plan must not preserve the contested lien. See In re Ahern Enters., Inc., 507 F.3d at 822. In regard to this criteria, the Fifth Circuit explained that a court must consider whether "the plan of reorganization provid[es] otherwise than that the property subject to [the creditor's] lien would be 'free and clear.'" Id. at 823-24. "In general, a plan of reorganization 'provides otherwise' by expressly stating that the lien that is asserted remains on the property to which it is attached." Id. at 824 (citing In re Reg'l Bldg. Sys., Inc., 254 F.3d at 531). SWT's confirmed plan does not expressly state that Acceptance's lien remains on the Highway 49 property. (Dkt. No. 93). Accordingly, the fourth *Ahern* condition is satisfied in this case.[10]

---

[10]During the Hearing, Acceptance's counsel argued that SWT's confirmed plan does not "deal with [Acceptance's] lien at all . . . it says very little about it." As explained in the body of this opinion, the terminology used by the plan satisfies the second and fourth *Ahern* conditions. It also satisfies the requirements of due process; the plan gives sufficient notice of the status of Acceptance's claim. The plan's treatment of Acceptance's lien is the culmination of an argument that has been the focus of litigation between SWT and Acceptance for more than five years. Acceptance cannot be surprised by the contents of the plan. Article IV of the plan addresses "Treatment of Claims and Interests Under the Plan," and SWT is obviously not mentioned in this section. (Dkt. No. 93 at 3). Instead, SWT is mentioned in Article V of the plan, entitled "Allowance and Disallowance

**5. *Ahern* Conclusion.**

As explained above, the Court finds that the four conditions outlined by the Fifth Circuit in *Ahern* are met in this case. Thus, under 11 U.S.C. § 1141(c), Acceptance's alleged lien was voided through the Chapter 11 plan confirmation process.

**B.   Request to Amend Confirmation Order/Chapter 11 Confirmed Plan.**

In its Motion, Acceptance requests that if, as was done above, the Court determines that Acceptance is not entitled to a finding that its lien is not affected by the plan confirmation order, that the Court:

> [A]mend the Plan Confirmation Order to provide for the resolution of the lien claim of Acceptance and allow Acceptance to file a proof of claim to have its disputed claim against the Debtor determined by the Court.

---

of Claims," which states:

> 5.01   Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.
>                 (a) the Debtor disputes the claim by Acceptance Loan Company, Inc. There has been no proof of claim filed by Acceptance Loan Company and the time to file such proof of claim has expired.
>
> 5.02   Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed [by a final non-appealable order].
>
> 5.03   Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

(Dkt. No. 93 at 4) (brackets and other markings included in original).

(Dkt. No. 125 at 2, ¶ 4). With little elaboration, Acceptance asserts that Bankruptcy Rules 9023 and 9024 authorize such a request.[11] These Bankruptcy Rules import Rules 59 and 60 of the Federal Rules of Civil Procedure, which generally address requests for amendments to or relief from final judgments,[12] into bankruptcy proceedings. Upon review, the Court finds there are several issues with Acceptance's request.

While Acceptance has labeled its Motion a motion to amend the confirmation *order*, its

---

[11]In the Motion, Acceptance does not cite any particular terminology in Bankruptcy Rules 9023 or 9024 or any specific subsections of Rules 59 and 60 of the Federal Rules of Civil Procedure. Acceptance simply broadly asserts that these rules support its argument. (Dkt. No. 125). In the supplemental brief Acceptance tendered to the Court post-Hearing, Acceptance did offer two additional clarifications *vis-a-vis* its Bankruptcy Rule 9023 arguments. (Dkt. No. 151). Acceptance states that Rule 9023 is applicable in this matter because the confirmation order has not become final. Furthermore, citing a case from the Southern District of New York, Acceptance argues one of the generally recognized grounds for granting a motion to amend a judgment is to prevent manifest injustice. (Dkt. No. 151) (citing Henderson v. Metropolitan Bank & Trust Co., 502 F. Supp.2d 372 (S.D.N.Y. 2007).

The cited decision by the federal district court in New York addressed a motion for relief from a judgment regarding a motion to dismiss a complaint on the grounds of *forum non conveniens,* not a motion to modify a confirmation order or a confirmed plan in a Chapter 11 bankruptcy case. While "manifest injustice" was mentioned as a ground for reconsideration of a judicial decision, it was mentioned in the following context: "[r]econsideration is also justified by an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Id. at 376 (internal quotation marks and citations omitted). In support of its Motion, Acceptance has not presented any "new" evidence, *e.g.*, evidence that could not have been raised prior to the final judgment at issue, in this case the confirmation of the plan. The controlling law Acceptance has cited, namely the *Ahern* decision, is not a recent decision and, moreover, it indicates that Acceptance's lien is void. The only error cited by Acceptance is its own oversight, which does not generally merit relief under Bankruptcy Rules 9023 and 9024. See infra pp. 18-20. Finally, considering all of the applicable law and facts in this case, in light of Acceptance's admitted error, this court does not find that the confirmed plan creates a "manifest injustice." Accord Fox v. American Airlines, Inc., 389 F.3d 1291, 1296 (D.C. Cir. 2004) (court did not abuse discretion under Fed. R. Civ. P. 59(e) when it declined to vacate judgment of dismissal to prevent alleged "manifest injustice" flowing from party's lack of due diligence).

[12]The confirmation of a Chapter 11 plan "is the equivalent of a final judgment in a civil litigation." See In re Rickel & Assocs., Inc., 260 B.R. 673, 677 (Bankr. S.D.N.Y. 2001).

Motion is, in substance, a motion to amend or modify the terms of the confirmed *plan* in this case.

Acceptance's Motion is therefore governed by the provisions of 11 U.S.C. § 1127(b), which, in

relevant part, states:

> The **proponent of a [Chapter 11] plan** or **the reorganized debtor** may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan . . . .

11 U.S.C. § 1127(b) (emphasis added); see also In re Rickel & Assocs., Inc., 260 B.R. 673, 677

(Bankr. S.D.N.Y. 2001)[13]; Alberta Energy Partners v. Blast Energy Servs., Inc. (In re Blast Energy

Servs., Inc.), 593 F.3d 418, 427 (5th Cir. 2010) (section 1127(b) prohibits actions in the bankruptcy

court that are essentially attempted modifications to a confirmed plan).[14] In regard to this statute, the

_____

[13]The *Rickel* court found as follows:

> It is true that the debtor has not technically proposed to disturb the Plan or modify it. Instead, it has moved to modify the Confirmation Order. The distinction, however, is irrelevant, and the result is the same. A debtor cannot circumvent § 1127(b) and change the plan simply by calling its request a motion to modify the confirmation order, In re Charterhouse, Inc., 84 B.R. at 150, or a plan-related document, Findley v. Blinken ( In re Joint E. & S. Dist. Asbestos Litig.), 982 F.2d 721, 748 (2d Cir.1992)(statutory limitations on modifying a substantially consummated plan cannot be circumvented by modifying a plan-related document) or another application that nonetheless affects rights under the plan. See In re United States Brass Corp., 255 B.R. 189, 194 (Bankr.E.D.Tex.2000)(modification of a substantially consummated plan will not be allowed regardless of the attempt to clothe the motion as a settlement or clarification of an order); In re U.S. Repeating Arms Co., 98 B.R. at 140 ("Trustee may not eliminate procedural safeguards by labeling a plan modification as a claim classification"). Here, the only proposed change to the Confirmation Order involves the treatment accorded to Class 6 under the Plan. Regardless of what the debtor chooses to call it, the motion is one to modify the Plan, and is subject to § 1127(b).

Id.

[14]Under 11 U.S.C. § 1144 and Bankruptcy Rule 9024, a litigant may specifically move to set aside the confirmation order rather than the plan if the order was procured by fraud. However, Acceptance has not argued that the confirmation order in this matter was procured by fraud.

Fifth Circuit has found as follows:

> It seems to be true that § 1127(b) of the Bankruptcy Code-which provides that the debtor or proponent of a confirmed reorganization plan may modify the plan before it has been substantially consummated-is "the sole means for modification of the plan of reorganization after it has been confirmed." 7 <u>Collier on Bankruptcy</u> ¶ 1127.04 (15th ed. rev.2009). [ [15] ] It can also operate to prohibit other actions in the bankruptcy court that are essentially attempted modifications to a confirmed plan. <u>See</u> <u>In re U.S. Brass Corp.</u> 301 F.3d 296, 306-08 (5th Cir.2002) (holding that a proposed settlement agreement between the debtor and its claimants would modify the confirmed plan and was prohibited by § 1127(b)).

<u>In re Blast Energy Servs. Inc.</u>, 593 F.3d at 427.

Under the standards described above, further consideration of Acceptance's request to amend or otherwise modify SWT's confirmed plan is foreclosed. First, since the Fifth Circuit has found that section 1127(b) is the only means for modification of a confirmed Chapter 11 plan, and Acceptance is neither the "proponent of a plan" nor the "reorganized debtor" authorized to modify a confirmed plan under section 1127(b), Acceptance does not have standing to move for the modification of SWT's confirmed Chapter 11 plan. <u>See</u> <u>also</u> <u>In re Calpine Corp.</u>, No. 05-60200, 2008 WL 207841 at *6 (Bankr. S.D.N.Y. Jan 24, 2008) (emphasizing that under section 1127(b) only the reorganized debtor or the proponent of a plan may seek modification of a confirmed plan) (citing <u>In re Burk Dev.</u> <u>Co., Inc.</u>, 205 B.R. 778, 799 (Bankr. M.D. La. 1997)).  Furthermore, as section 1127(b) is the only means for modification of a confirmed Chapter 11 plan, it would appear that Bankruptcy Rules 9023 and 9024 have limited application, if any, in the context of the present Motion. The Fifth Circuit clearly stated that section 1127(b) "operate[s] to prohibit other actions in the bankruptcy court that

---

[15] <u>See</u> <u>In re Rickel & Assocs., Inc.</u>, 260 B.R. at 677  ("Section 1127(b) provides the sole means for modifying a confirmed plan.") (citing <u>In re Ionosphere Clubs, Inc.</u>, 208 B.R. 812, 815 (S.D.N.Y. 1997) and 7 Lawrence P. King, et al., <u>Collier on Bankruptcy</u> ¶ 1127.04, at 1127-7 (15th rev. ed. 2000)).

are essentially attempted modifications to a confirmed plan;" and in this case, it is evident that Acceptance is attempting to use its Motion, brought under Bankruptcy Rules 9023 and 9024, to modify SWT's confirmed plan. In re Blast Energy Servs., Inc., 593 F.3d at 427; see also In re Rickel & Assocs., Inc., 260 B.R. at 676-80 ("the Rules cannot provide a remedy that the Bankruptcy Code has substantively foreclosed," thus Rule 9024 cannot be used to circumvent section 1127(b)).

Even if they were applicable in this case, Bankruptcy Rules 9023 and 9024, incorporating Rules 59 and 60 of the Federal Rules of Civil Procedure into these proceedings, do not provide grounds for the relief Acceptance seeks.[16] Under both Rules 59 and 60, a party seeking relief from or modification of a judgment bears the burden of demonstrating reasons that justify the court's reconsideration of its prior ruling. See Artemis Seafood, Inc. v. Butcher's Choice, Inc., No. 98-CV-0282-D, 1999 WL 1032798 (N.D. Tex. Nov. 10, 1999) (under Rule 59, the movant must demonstrate valid reasons that justify the court's reconsideration of a prior ruling); Edward H. Bohlin Co., Inc. v. The Banning Co., Inc., 6 F.3d 350, 356 (5th Cir. 1993) (expressing a similar standard for Rule 60(b)). A Court must then consider the movant's stated justification for relief in light of two competing imperatives: (1) the finality of judicial judgments/plan confirmations[17] and (2) the need

---

[16]To the extent that Acceptance has *implicitly* raised the argument that this Court has authority pursuant to its general equitable powers under 11 U.S.C. § 105(a) to modify the confirmed plan in this case, this argument must be rejected.

> A bankruptcy court cannot exercise its equitable powers outside of the confines of the Bankruptcy Code, or disregard its specific commands. . . . Consequently, it cannot modify a plan under § 105(a), and produce a result at odds with the specific provisions of § 1127(b).

In re Rickel & Assocs., Inc., 260 B.R. at 678 (citations omitted).

[17]See In re Calpine Corp., No. 05-60200, 2008 WL 207841, at *7 (Bankr. S.D.N.Y. Jan. 24, 2008) ("there is a strong public 'need for finality of decisions, especially in a bankruptcy

to render just decisions on the basis of all the facts. <u>See</u> <u>Edward H. Bohlin Co., Inc.</u>, 6 F.3d at 355-56. Moreover, the movant's justification must be measured against several other standards established by the relevant case law. For instance, the Supreme Court has found that Rule 59 may not be used to raise arguments or present evidence that could have been raised prior to the final judgment at issue, in this case the confirmation of the plan. <u>See</u> <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471, 486 n.5, 128 S.Ct. 2605, 2617 (2008) (citing 11 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 2810.1, pp. 127-128 (2d ed.1995)); <u>see also</u> <u>Elementis Chromium L.P. v. Coastal States Petroleum Co.</u>, 450 F.3d 607, 610 (5th Cir. 2006) ("[m]otions to alter or amend judgments cannot be used to raise arguments which could, and should, have been made before the judgment issued . . . .") (internal quotations and citation omitted).Because of the narrow purpose of Rule 59, in particular subsection (e) of the Rule,[18] motions brought under this provision are generally denied. <u>See</u> Wright, *supra* (incorporating updates through 2010). In regard to Rule 60, the Fifth Circuit has held:

> Denial of a Rule 60(b) motion to set aside a [judgment] under clause (1) [of that Rule] is not an abuse of discretion when the proffered justification for relief is the "inadvertent mistake" of counsel. Gross carelessness, ignorance of the rules, or ignorance of the law are insufficient bases for 60(b)(1) relief. A party has a duty of diligence to inquire about the status of a case; Rule 60(b) relief will only be afforded in "unique circumstances." In fact, a court would abuse its discretion if it were to reopen a case under Rule 60(b)(1) when the reason asserted as justifying relief is one attributable solely to counsel's carelessness with or misapprehension of the law or the applicable rules of court.

<u>Edward H. Bohlin Co., Inc.</u>, 6 F.3d at 356-57 (footnotes omitted). Similarly, the Supreme Court has

proceeding.'") (citations omitted).

[18]In its rebuttal to SWT's post-Hearing brief, Acceptance remarks: "[a]s stated in Acceptance's original brief, one of the Motions before the Court is a Rule 9023 motion, which makes it a Rule 59(e) motion." (Dkt. No. 159 at 3).

held that "Rule 60(b)(4) does not provide a license for litigants to sleep on their rights." Espinosa, -- U.S. --, 130 S.Ct. at 1380.

At the Hearing, Acceptance stated that it received all of the required notices in this case, specifically noting that it had notice of the bankruptcy and notice of the plan confirmation hearing. According to counsel for Acceptance, although there was no "intent to ignore" these notices, "in fact they were ignored" due to "inadvertence and oversight." At the Hearing, Acceptance argued that the Court should not allow the current Chapter 11 plan to remain in effect based simply on the "procedural failure on [Acceptance's] part to file an objection to the confirmation of the plan." Considering the standards outlined above, Acceptance's arguments do not justify relief under Rules 59 and 60 of the Federal Rules of Civil Procedure.

**C.    Acceptance's Request to Modify the Automatic Stay.**

As an alternative means for relief, Acceptance has requested that the Court modify the automatic stay to allow a state court to determine "the lien rights of the parties." (Dkt. No. 125 at 2). Under 11 U.S.C. § 362(d), this Court may modify the automatic stay "for cause." "Cause" is not exhaustively defined in the statute, affording the courts a measure of discretion in this regard. As explained herein, Acceptance's alleged lien has been voided through the Chapter 11 plan confirmation process, accordingly, the "lien rights of the parties" have been determined. Thus, there is no cause which justifies the modification of the automatic stay in this case.

## IV. CONCLUSION

Based on the foregoing, Acceptance's Motion (Dkt. No. 125) is **DENIED**.

SO ORDERED.

Katharine M. Samson
United States Bankruptcy Judge

Dated:  June 7, 2011